# STATE, Respondent v. BATES, Appellant

## (71 N.W.2d 641)

(File No. 9447. Opinion filed August 9, 1955)

Rehearing denied September 7, 1955

**Phil Saunders,** Atty. Gen., **Walter Mueller,** Asst. Atty. Gen., and **Richard A. Furze,** State's Atty., Lead, for Plaintiff and Respondent.

**Thos. G. Wall,** Sturgis, for Defendant and Appellant.

RENTTO, J. A jury in the Municipal Court of Lead, South Dakota, found the defendant, H. O. Bates, guilty of killing an elk in Lawrence County, South Dakota in violation of SDC Supp. 25.0701. On this verdict judgment was entered that the defendant pay a $100 fine and the costs of prosecution. Motion for a new trial was denied. This appeal is from the judgment and order denying a new trial.

On August 10, 1953, the South Dakota Game, Fish and Parks Commission by resolution promulgated its Regulation No. 137 to be in force and effect from and after November 1, 1953. So far as here material that regulation made it lawful for any person holding a valid big game license to kill an elk, in addition to a deer, during the period from November 1, 1953, to November 30, 1953, in an area including that part of Pennington County which joins Lawrence County on the south. However, Regulation No. 137 did not authorize the killing of an elk in any part of Lawrence County. The information charged that the offense was committed on November 1, 1953. Defendant was properly licensed to hunt big game.

After the state rested its case defendant moved for a directed verdict of acquittal. This was denied. It was renewed at the close of all the testimony and again denied. In each instance the motion challenged the sufficiency of the evidence. The sufficiency of the evidence was again questioned by defendant's motion for a new trial. The court's denial of defendant's motion for a directed verdict of acquittal made at the close of the state's case is appellant's basic assignment of error.

On the day in question a game warden and a deputy game warden traveling together in an official car had been informed that the carcass of an elk had been seen in Rifle Pit Canyon in Lawrence County. About an hour later at 4:30 p. m. these two arrived there by car. From where they stopped their car along the road they could see the defendant, some deer carcass on the ground, and a pickup truck. They walked to where they had seen the defendant but when they got there he had gone. It was then that they noticed the carcass of a large bull elk hanging from a tree. It was suspended by a single tree and a block and tackle. It had been skillfully skinned and drawn. The hide, with the head attached, and the entrails were on the ground near the carcass. A metal locking seal was attached to the leg bone and fastened to the tree was a paper tag bearing the name of defendant. The place where the elk was suspended was in the southwest corner of Lawrence County about six airline miles north of the common line which is the northern boundary of Pennington County and the southern boundary of Lawrence County. By road it is about ten miles to the boundary. The state line between South Dakota and Wyoming is about 2.5 miles to the west. In the general area of the elk there were three motor vehicles and the cleaned carcass of several deer. There were no deer entrails on the ground.

The wardens were dressed in their official uniforms which bore the badges and insignia of their offices. After they had spent a minute or two examining the elk the defendant walked out of the timber and came to where the officers were. The warden engaged the defendant in conversation. Without quoting the conversation in full a fair summary of the warden's testimony concerning it is as follows: The warden asked defendant whose elk it was and he said it was his. The warden remarked it was a fine animal and asked defendant where he had gotten it. Defendant said he got it about a mile down the draw in a northwesterly direction toward the Wyoming line from where they stood. According to the warden the indicated spot was in Lawrence County. The warden inquired as to when, and the defendant said the first thing early in the morning. He was riding in the Jeepster when the animal appeared and he got out and

shot it. When the officer asked him how many times he shot he replied he didn't know and that later they got the Jeep pickup and loaded the elk and hauled it out and hung it up. When asked, defendant told who was with him and inquired if there was something wrong with the elk. He was told by the officer it was a closed season—not open to elk hunting and that the officer would have to arrest him and take his gun. Defendant then said he thought it was open territory and had been so advised by one of his party. Defendant then asked this member of his party "Didn't you tell me that was open territory to elk", to which he replied "Oh, I thought you said you shot the elk".

The deputy warden was present and heard the conversation. His testimony in the main agrees with the warden's version. The warden testified that a few days later defendant called him by phone and expressed a desire to meet the warden that evening and talk with him, but the warden had other engagements. When asked what he wanted, defendant said he had been looking over the map and that the elk was killed in Pennington County. The warden testified that during the conversation at the scene the defendant said he was unfamiliar with the country and didn't know where he was. In stipulations made during the presentation of the state's case defendant admitted that the place where the elk was suspended was in Lawrence County and that he killed it. His motion for a directed verdict of acquittal, and our review of the ruling thereon, are provided for by SDC 34.3650. It is bottomed on the insufficiency of the evidence to prove that the elk was killed in Lawrence County. It is his claim that the evidence does not establish the corpus delicti.

 The rules of evidence which govern in other criminal prosecutions generally apply in a prosecution for a violation of the game laws with respect to the burden on the prosecution to prove the essential elements of the offense charged, and also with respect to the admissibility and the weight and sufficiency of the evidence. 38 C.J.S., Game, § 18, p. 27; 24 Am.Jur. § 28, p. 392. Corpus delicti means the body or substance of the crime and may be defined in its primary sense as the fact that the crime charged has actually

been committed by someone. The identity of the perpetrator of the crime is not an element of the corpus delicti.

No objection was interposed when the warden was asked to relate the extrajudicial statements the defendant made in the conservation had with the warden. Consequently we are not here concerned with the degree of proof of the corpus delicti essential to warrant the introduction in evidence of the extrajudicial statements of the accused. The only matter presented for review by this assignment is the sufficiency of the evidence in chief of the state to justify a submission of the case to the jury.

 In addition to the accused's extrajudicial statements the only evidence introduced by the state concerning the corpus delicti is the location of the elk when discovered by the warden and the attendant circumstances. That the elk was killed in Lawrence County is an essential element of the corpus delicti. The prosecution is burdened with the obligation of proving this fact beyond a reasonable doubt. While the corpus delicti cannot be presumed it may be established by circumstantial evidence. The extrajudiciai admissions of an accused, of themselves, are not sufficient to establish the corpus delicti, but they may be considered in connection with other independent evidence in determining whether the corpus delicti is sufficiently proved. The evidence of corpus delicti, independent of the extrajudicial admission of the accused, need not be conclusive in character. Nor must the independent evidence be such that it alone is sufficient to prove the crime beyond a reasonable doubt. It is sufficient if there be such extrinsic corroborating or supplemental circumstances as will, when taken in connection with the admissions, establish beyond a reasonable doubt that the crime was in fact committed by someone. 23 C.J.S., Criminal Law, § 916, p. 181; 20 Am. Jur. §§ 1230-1234, p. 1083; Whartons Criminal Law, 12th Ed., Vol. 1, §§ 346-363, p. 449; Howes v. State, 109 Tex.Cr.R. 136, 3 S.W.2d 445; People v. Selby, 198 Cal. 426, 245 P. 426; People v. McMonigle, 29 Cal.2d 730, 177 P.2d 745; Snead v. State, 251 Ala. 624, 38 So.2d 576; Hoffman v. State, 160 Neb. 375, 70 N.W.2d 314; Ridinger v. State, 97 Okl.Cr. 377, 267 P.2d 175;

State v. Saltzman, 241 Iowa 1373, 44 N.W.2d 24; 103 Univ. of Pa.Law Review, p. 638 (No. 5, March 1955).

■ The evidence of corpus delicti, independent of the extrajudicial admissions of the accused, satisfies the rule requiring corrobation if it is sufficient to convince the jury that the crime charged is real and not imaginary. If it establishes the corpus delicti to a probability the requirement of the law has been met. It is sufficient even though it is wholly circumstantial and furnishes only slight corrobation. Wharton's Criminal Evidence, 11th Ed., Vol. II, § 641, p. 1072; Buford v. State, 219 Miss. 683, 69 So.2d 826; Martinez v. People, Colo., 267 P.2d 654.

■ ■ Our present statute providing for the direction of a verdict of acquittal, SDC 34.3650, does not contain the phrase "If, * * * the court deem it insufficient to warrant a conviction," (referring to the evidence) which phrase was in our former statute providing for the advising of a verdict of acquittal. Section 4894, Rev. Code 1919. The present statute gives the court authority to direct a verdict of acquittal without specifying the conditions under which it may be done. However, it is our view that the rule announced by this court under the former statute as to when a verdict should or should not be advised, applies under the present statute when the motion for a directed verdict of acquittal is predicated on the insufficiency of the evidence. State v. Halladay, 68 S.D. 547, 5 N.W.2d 42.

Applying the former statute this court in State v. Egland, 23 S.D. 323, 121 N.W. 798, 799, said: "When the state has introduced evidence upon which, if believed by the jury, they may reasonably find the defendant guilty of the crime charged, the state has made out a prima facie case, and the court would not be justified in taking the case from the jury, and advising a verdict in favor of the defendant, or as stated by Mr. Thompson in his work on Trials (section 2246): 'In other words, where the facts offered in evidence by the plaintiff, if true, make out a prima facie case, the jury, and not the judge, ought to pass upon them.'" See also State v. Alick, 62 S.D. 220, 252 N.W. 644; State v. Dale, 66 S.D. 418, 284 N.W. 770: This criterion applies whether the motion challenges the sufficiency of the evidence to connect

the defendant with the crime, or the sufficiency of the evidence to establish the corpus delicti. 23 C.J.S., Criminal Law, § 1124, p. 620; 20 Am.Jur. § 1230, p. 1083. It is our view that the evidence introduced by the state made a submissible case and justified the court's denial of defendant's motion.

Defendant and his witnesses testified that the elk, weighing between between 600 and 700 pounds, was killed in Pennington County and then hauled in a pickup some 12 to 15 miles to the place where it was discovered by the wardens in Lawrence County, and there hung up, skinned and drawn. The singletree, block and tackle were available when the elk was shot. Defendant denied the warden's version of their conversation in so far as it related to where the elk was killed. He claimed that he told the warden that the place where he killed it was south of where the elk was found by the warden and that he didn't tell him how far in that direction. Defendant claims that he had no intention of violating the law. He testified that when he shot the elk he didn't know what county he was in and that he didn't know that the season on elk was closed in Lawrence County.

At the close of all the testimony the defendant renewed his motion for a directed verdict of acquittal. It is predicated on the ground urged in support of his former motion and on the additional ground that there was an absence of scienter. The denial of this motion is assigned as error.

The evidence on behalf of the defendant put in issue the credibility of the witnesses and necessitated a weighing of the evidence. The determination of these matters is exclusively within the domain of the jury. State v. Fox, 72 S.D. 119, 31 N.W.2d 451. The jury elected to disbelieve the defendant and his witnesses and accepted the warden's version of his conversation with the defendant. This the jury was privileged to do. The evidence of the state, including the reasonable inferences which the jury was at liberty to draw from the circumstances presented, is sufficient to justify its verdict. We cannot disturb that verdict on this appeal. State v. Fox, supra.

■ The statute under which this prosecution is brought, SDC Supp. 25.0701, does not contain the word "knowingly" or any similar term making scienter an element of the offense. Where there is nothing in the statute to indicate that scienter is an element of the offense, the knowledge or lack of knowledge of the person committing the act which the statute forbids is immaterial. State v. Whitman, 52 S.D. 91, 216 N.W. 858. The doing of the prohibited act constitutes the crime. The knowledge or ignorance of its criminal character, are irrevelant on the issue of guilt. Wess v. South Dakota Packing & Shipping Co., 43 S.D. 467, 180 N.W. 510. Defendant's motion was properly denied.

We have examined and considered the other errors assigned. They are without merit.

The judgment and order appealed from are affirmed.

All the Judges concur.